**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

GEORGE M.,[1]

                Plaintiff,

v.

KILOLO KIJAKAZI,[2]
Acting Commissioner of Social Security,

                Defendant.

Case No. 3:21-cv-00203-TMB

## DECISION AND ORDER

On or about January 18, 2018, George M. ("Plaintiff") protectively filed an

application for disability insurance benefits ("DIB") and supplemental security income

("SSI") under Titles II and XVI, respectively, of the Social Security Act ("the Act")[3]

---

[1] Plaintiff's name is partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Kilolo Kijakazi is now the Acting Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* section 205(g) of the Social Security Act, 42 U.S.C. 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

[3] Title II of the Social Security Act provides benefits to disabled individuals who are insured by virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a certain amount of time. Title XVI of the Social Security Act is a needs-based program funded by general tax revenues designed to help disabled individuals who have low or no income. Plaintiff brought claims under Titles II and XVI. Although each program is governed by a separate set of regulations, the regulations governing disability determinations are substantially the same for both programs. *Compare* 20 C.F.R. §§ 404.1501–1599 (governing disability determinations under Title II) *with* 20 C.F.R. §§ 416.901–999d (governing disability determinations under Title XVI). For convenience, the Court cites the regulations governing disability determinations under both titles.

alleging disability beginning June 1, 2013.[4] Plaintiff has exhausted his administrative remedies and filed a Complaint seeking relief from this Court.[5] Plaintiff's Opening Brief asks the Court to reverse and remand the agency's decision for an award of benefits, or in the alternative, for further administrative proceedings.[6] The Commissioner filed an Answer and Response Brief.[7] Plaintiff filed a Reply Brief.[8]

The Commissioner agrees with Plaintiff that the final decision contains legal errors and should be reversed.[9] However, the parties disagree on the appropriate remedy. Plaintiff seeks reversal and remand directing the immediate payment of benefits, while the Commissioner contends that a remand for further proceedings is warranted.[10]

---

[4] Administrative Record ("A.R.") 19. The application summaries, not the applications themselves, appear in the Court's record. Plaintiff's file contains two application summaries, the first confirming his SSI application was completed January 18, 2018 and a second confirming his DIB application was completed on January 19, 2018. A.R. 193, 199. Pursuant to 20 C.F.R. § 416.340-345, a protective filing date establishes the earliest possible application date based on a claimant's oral inquiry about eligibility or a verbal or written statement of intent to file for benefits. Therefore, the earlier date, January 18, 2018 is considered Plaintiff's application filing date.

[5] Docket 1 (Plaintiff's Compl.).

[6] Docket 12 (Plaintiff's Br.).

[7] Docket 10 (Answer); Docket 13 (Defendant's Br.).

[8] Docket 14 (Reply).

[9] Docket 13.

[10] Docket 12; Docket 13; Docket 14.

Case No. 3:21-cv-00203-TMB
Decision and Order
Page 2 of 27

Oral argument was not requested and was not necessary to the Court's decision. This Court has jurisdiction to hear an appeal from a final decision of the Commissioner of Social Security.[11] For the reasons set forth below, the Commissioner's decision is reversed and remanded for further administrative proceedings.

## I. STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it is either not supported by substantial evidence or is based upon legal error.[12] "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[13] Such evidence must be "more than a mere scintilla," but may be "less than a preponderance."[14] In reviewing the agency's determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the administrative law judge

---

[11] 42 U.S.C. § 405(g).

[12] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

[13] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)).

[14] *Id.*; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

Case No. 3:21-cv-00203-TMB
Decision and Order
Page 3 of 27

("ALJ")'s conclusion.[15]  If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[16]  A reviewing court may only consider the reasons provided by the ALJ in the disability determination and "may not affirm the ALJ on a ground upon which he did not rely."[17]  An ALJ's decision will not be reversed if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."[18]  Finally, the ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."[19]  This duty exists "even when a claimant is represented by counsel."[20]

---

[15] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

[16] *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citing *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

[17] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

[18] *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015) (internal quotations and citations omitted).

[19] *Smolen v. Chater,* 80 F.3d 1273,1288 (9th Cir. 1996) (quoting *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983)) *superseded in part by statute on other grounds*, 20 C.F.R. § 416.929(c)(3); *see also Garcia v. Comm'r of Soc. Sec.,* 768 F.3d 925, 930 (9th Cir. 2014).

[20] *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001).

## II.  DETERMINING DISABILITY

The Social Security Act ("the Act") provides for the payment of disability insurance to individuals who have contributed to the Social Security program and who suffer from a physical or mental disability.[21]  In addition, Supplemental Security Income ("SSI") may be available to individuals who do not have insured status under the Act but who are age 65 or older, blind, or disabled.[22]  Disability is defined in the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[23]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[24]

---

[21] 42 U.S.C. § 423(a).

[22] 42 U.S.C. § 1381a.

[23] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[24] 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[25] A claimant bears the burden of proof at steps one through four in order to make a prima facie showing of disability.[26] If a claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five.[27] The Commissioner can meet this burden in two ways: "(a) by the testimony of a vocational expert, *or* (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[28] The steps, and the ALJ's findings in this case, are as follows:

**Step 1.** Determine whether the claimant is involved in "substantial gainful activity."[29] *The ALJ determined that Plaintiff had engaged in substantial activity from August 2018 through the date of the hearing.*[30] *Plaintiff challenges the denial for the closed period between Plaintiff's amended onset date, February 28, 2014, and September 4, 2019, the date of the ALJ's decision.*[31]

---

[25] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[26] *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); s*ee also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[27] *Treichler*, 775 F.3d at 1096 n.1; *Tackett*, 180 F.3d at 1098 (emphasis in original).

[28] *Tackett*, 180 F.3d at 1101.

[29] 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[30] A.R. 21.

[31] A.R. 29.

**Step 2.** Determine whether the claimant has a medically severe impairment or combination of impairments. A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities and does not consider age, education, or work experience. The severe impairment or combination of impairments must satisfy the twelve-month duration requirement.[32] *The ALJ determined that Plaintiff had the following severe impairments: diabetes mellitus, type II, coronary artery disease and carotid artery disease, degenerative joint disease, carpal tunnel syndrome bilaterally, and mild obesity.[33] The ALJ found the following non-severe impairments: hepatitis C, psoriasis, and trigger finger.[34]*

**Step 3.** Determine whether the impairment or combination of impairments meet(s) or equal(s) the severity of any of the listed impairments found in 20 C.F.R. pt. 404, subpt. P, app.1, precluding substantial gainful activity. If the impairment(s) is(are) the equivalent of any of the listed impairments, and meet(s) the duration requirement, the claimant is conclusively presumed to be disabled. If not, the evaluation goes on to the fourth step.[35] *The ALJ determined that Plaintiff did not*

---

[32] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[33] A.R. 22.

[34] A.R. 22-23.

[35] 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

Case 3:21-cv-00203-TMB   Document 16   Filed 07/15/22   Page 7 of 27

*have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.[36]*

Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed.[37]  Once determined, the RFC is used at both step four and step five.  An RFC assessment is a determination of what a claimant is able to do on a sustained basis despite the limitations from his impairments, including impairments that are not severe.[38]  *The ALJ determined that Plaintiff had the residual functional capacity to perform light work with the following limitations: he could frequently balance, climb ramps and stairs, and perform bilateral handling, fingering, and feeling; he could occasionally stoop, kneel, crouch, crawl, and perform bilateral overhead reaching; he could never climb ladders, ropes, or scaffolds; and he should avoid moderate exposure to non-weather related extreme cold, excessive vibration, and all exposure to unprotected heights.[39]*

**Step 4.**  Determine whether the claimant is capable of performing past relevant work.  At this point, the analysis considers whether past relevant work

---

[36] A.R. 23.

[37] 20 C.F.R. §§ 404.1545, 416.945.

[38] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[39] A.R. 24.

Case No. 3:21-cv-00203-TMB
Decision and Order
Page 8 of 27

requires the performance of work-related activities that are precluded by the claimant's RFC. If the claimant can still do his past relevant work, the claimant is deemed not to be disabled.[40] Otherwise, the evaluation process moves to the fifth and final step. *The ALJ determined that Plaintiff was unable to perform any past relevant work as a nurse aide (DOT #355.674-014) or truck driver (DOT #906.683-022) as actually or generally performed.[41] However, relying on testimony from the VE, the ALJ determined Plaintiff acquired the following transferrable work skills from his past work: attending to clients, medication management, and helping clients with activities of daily living, such as cooking or driving clients to medical appointments.[42]*

**Step 5.** Determine whether the claimant is able to perform other work in the national economy in view of his age, education, and work experience, and in light of the RFC. If so, the claimant is not disabled. If not, the claimant is considered disabled.[43] *The ALJ determined Plaintiff's transferrable skills would allow him to*

---

[40] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[41] A.R. 28. Past relevant work is work performed in the 15 years before the date of the disability determination or when the disability insured status requirement was last met, if earlier. 20 C.F.R. § 404.1565(a). SSA initially denied Plaintiff at step four after determining he could return to his work as a booking officer as generally performed in the national economy. A.R. 77, 242-244. However, the Detailed Earnings Report, which was ran after the initial determination, indicated this work was actually done prior to the 15-year period (2002-2017) before Plaintiff's DLI (6/30/2017). A.R. 208-210. Thus, booking clerk was not considered by the ALJ.

[42] A.R. 28.

[43] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

*perform work as a companion (DOT #309.677-010). Additionally, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including parking lot attendant (DOT #915.473-010), router (DOT #222.587-038), and housekeeping cleaner (DOT #323.687-014).*

The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from his February 28, 2014[44] through September 4, 2019, the date of the ALJ's decision.[45]

## III. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff was born in 1959 and was 55 years old on his amended alleged onset date.[46] Plaintiff met the insured status requirements for DIB benefits through June 30, 2017.[47] Plaintiff applied for disability benefits on January 18, 2018.[48] On August 9, 2018, the Social Security Administration ("SSA") determined Plaintiff was

---

[44] At the administrative hearing, Plaintiff amended his onset date from June 1, 2013, to February 28, 2014, his 55th birthday. A.R. 39.

[45] A.R. 22.

[46] A.R. 19.

[47] A.R. 21. In order to qualify for disability benefits under Title II, a claimant must have "insured status" and show his disability began by his date last insured. 42 U.S.C. §§ 423(a)(1), (c)(2), (d)(1)(A).

[48] A.R. 248-252.

Case No. 3:21-cv-00203-TMB
Decision and Order
Page 10 of 27

not disabled under the applicable rules.[49]  Plaintiff requested a hearing before an

ALJ.[50]  On July 29, 2019, Plaintiff and his representative appeared telephonically

at his administrative hearing.[51]  A medical expert ("ME"), psychological medical

expert ("PME"), and vocational expert ("VE") also testified by telephone.[52]  On

January 13, 2021, the ALJ issued an unfavorable decision.[53]  On June 18, 2020,

the Appeals Council denied Plaintiff's request for review.[54]  On September 9, 2021,

Plaintiff appealed the Commissioner's final decision to this Court.[55]

## IV.  DISCUSSION

Plaintiff is represented by counsel in this appeal.  Plaintiff asserts the ALJ

(1) erred in finding Plaintiff could perform work existing in significant numbers in

the national economy where the medical-vocational guidelines dictated a finding

---

[49] A.R. 96.

[50] A.R. 103.

[51] A.R. 19.

[52] A.R. 40-47 (medical expert testimony); A.R. 47-49 (psychological expert testimony); A.R. 56-64 (vocational expert testimony).

[53] A.R. 19-29.

[54] A.R. 1.

[55] Docket 1.  Applicants for disability benefits have 60 days from the date of the Appeal Council's denial to file in federal court or must request additional time. 20 C.F.R. § 404.981; *see also* Program Operations Manual System ("POMS") § GN 03101.010.  On August 20, 2020, Plaintiff's representative requested additional time to file a civil action in federal court. A.R. 10.  On August 10, 2021, the Appeals Council granted the request, allowing Plaintiff 30 days from the receipt of the letter to file the federal complaint. A.R. 7.

Case No. 3:21-cv-00203-TMB
Decision and Order
Page 11 of 27

that plaintiff was disabled; and (2) erred in her consideration of plaintiff's subjective complaints.[56]  Plaintiff contends any factual conflicts which exist are immaterial, and the case should be remanded for an immediate award of benefits.

The Commissioner concedes the ALJ's decision contains reversible legal errors because some of the skills identified by the VE are not considered transferable under Social Security's rules and regulations.[57]  However, the Commissioner argues that significant factual conflicts exist, so the case should be remanded for further proceedings.  Therefore, the parties' disagreement in this case focuses on the scope of the remand.

A.  Legal Standard for Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.[58]  When prejudicial error has occurred, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."[59]

---

[56] Docket 12 at 3, 6.

[57] Docket 13 at 3.

[58] *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987) (remanding for determination of benefits where the panel was "convinced that substantial evidence does not support the Secretary's decision, and because no legitimate reasons were advanced to justify disregard of the treating physician's opinion").

[59] *Treichler*, 775 F.3d at 1099 (9th Cir. 2014).

Case No. 3:21-cv-00203-TMB
Decision and Order
Page 12 of 27

To determine which type of remand is appropriate, a court follows a three-step analysis known as the "credit-as-true" rule.[60]  In order to remand for payment of benefits, a court must conclude: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; (2) the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.[61]  However, "even if all three requirements are met, [a court] retain[s] 'flexibility' in determining the appropriate remedy" and "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'"[62]

Plaintiff asserts that all three requirements are met and there is no serious doubt that Plaintiff is disabled.  The Commissioner disputes Plaintiff's assertions and seeks a remand for further proceedings to resolve the factual conflicts in the existing record and further develop the record.  For the reasons explained below, the Court reverses and remands for further administrative proceedings.

---

[60] *Garrison,* 759 F.3d at 1019.

[61] *Leon v. Berryhill,* 880 F.3d 1041, 1045 (9th Cir. 2017) (internal citations and quotations omitted).

[62] *Brown-Hunter,* 806 F.3d at 495 (quoting *Garrison,* 759 F.3d at 1021).

B. <u>The ALJ Erred in Evaluating Plaintiff's Past Work and Transferrable Skills</u>

The ALJ determined Plaintiff was unable to perform his past relevant work as a nurse aide (DOT #355.674-014)[63] or truck driver (DOT #906.683-022) as actually or generally performed. However, the ALJ found Plaintiff had acquired skills from his past work as a nurse's aide (SVP-4, "semi-skilled"), that would enable him to transfer to work as a companion (DOT #309.677-010).[64]

The Commissioner concedes that the ALJ erred at step five and agrees to a remand for further proceedings. The Commissioner acknowledges that some of the skills identified by the VE are not considered transferable skills under the social security rules and regulations.[65] Social security applicants are considered to have transferable skills "when the skilled or semi-skilled work activities [they] did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work."[66] A skill is "knowledge of a work activity which requires the exercise of significant judgment" going beyond "simple job duties" and typically requires more than 30 days to learn.[67] Semiskilled occupations are more

---

[63] The Hearing Decision and DOT #355.674-014 use the title "Nurse Assistant," but the DOT includes a list of alternative job titles, such as Nurse Aide, Caregiver, Home Health. For consistency with the SSRs, the Court will use Nurse Aide throughout this decision.

[64] A.R. 28.

[65] Docket 13 at 3.

[66] 20 C.F.R. §§ 404.1568(d)(1), 416.968(b).

[67] Social Security Ruling (SSR) 82-41, *available at* 1982 WL 31389.

complex than unskilled work; however, the work activities in some semiskilled jobs may be little more than unskilled.[68]

Social Security Ruling[69] (SSR) 82-41 specifically discusses the "nurse aide" position in the context of transferable skills.  SSR 82-41 explains:

> A nurse aide ordinarily performs other tasks which do not provide a special advantage over unskilled workers, such as dusting and cleaning rooms, changing bed linens, and bathing, dressing and undressing patients.  The only duties which suggest transferable skills are those related to "nurse" rather than "aide" -- taking and recording the rates of temperature, pulse and respiration; and recording food and liquid intake and output. However, these occasional or incidental parts of the overall nurse aide job, which are a small part of a higher skilled job (nurse), would not ordinarily give a meaningful vocational advantage over unskilled work.  The extent of such duties, however, may vary with individual nurse aides.[70]

Plaintiff worked for an assisted living company from 2002-2004 and again in 2006.[71]  At his hearing, Plaintiff testified that he received training for this position, which he believed was called "nurse aide," but did not remember when he completed the training.  He explained that he assisted clients in their homes with meals, bathing, using the restroom, and light housework, such as vacuuming and

---

[68] *Id.*

[69] *Wellington v. Berryhill,* 878 F.3d 867 (9th Cir. 2017) (SSRs reflect the official interpretation of SSA.  Although they do not carry the force of law, they are nevertheless binding on ALJs and are entitled to some deference as long as they are consistent with the Act and regulations.).

[70] SSR 82-41, *available at* 1982 WL 31389.

[71] A.R. 49-51 (Plaintiff's testimony), 208 (Detailed Earnings Query).

mopping.[72]  He also provided them with their pill boxes during mealtime, but the clients took the medication themselves.[73]  Other than Plaintiff's testimony, there is no other information about this position in the record.[74]

Based on Plaintiff's testimony, the VE classified this position as a nurse aide (DOT #355.674-014).  The VE testified that from his work as a nurse aide, Plaintiff acquired the following skills: "attending to clients, medication management, and helping [clients] with activities of daily living, such as cooking or driving them."[75] The VE opined these skills would allow Plaintiff to work as a companion (DOT # 309.677-010), which he explained is "essentially the same job" as the nurse aide position, but less physically demanding.[76]  He estimated that there are approximately 71,000 companion positions in the national economy.

The Commissioner concedes that "some of the skills identified," such as attending to clients and assisting with daily actives, *e.g.,* cooking and cleaning, are

---

[72] A.R. 50-51.

[73] A.R. 50.

[74] During the application process, Plaintiff submitted a Work History Report listing laborer/worker and booking officer as his past work. A.R. 242-244.  At the hearing, the ALJ questioned Plaintiff about his work for an assisted living facility based on the Detailed Earnings Query in the record. A.R. 208.

[75] A.R. 28.

[76] A.R. 61.

Case No. 3:21-cv-00203-TMB
Decision and Order
Page 16 of 27

not transferrable.[77]   However, the Commissioner argues the case needs further development regarding Plaintiff's duties related to "nurse" rather than "aide" and whether the nursing duties were more than occasional or incidental.[78]

There is no evidence to suggest Plaintiff ever took temperature, pulse or respiration or recorded food and liquid intake and output, or any other nurse-like duties, even occasionally or incidentally.  The only potential skill identified by the VE that could potentially be considered transferrable under the guise of SSR 82-41 is "medication management."  It is unclear what the VE meant by medication management and how that skill would transfer to the companion position.[79]  Even if Plaintiff did acquire this minimal level skill, absent extraordinary circumstances, it would *not* provide a meaningful vocational advantage over unskilled work and thus are not "transferable skills."[80]

Although the VE testified there were no additional skills or vocational adjustments needed for the companion position,[81] the VE did not provide any

---

[77] Docket 13 at 3.

[78] Docker 13 at 4-5.

[79] The Court is unaware of any SSA or DOT definition of "medication management."  Considering common usage and Defendant's use of "administering medicine" (Docket 13 at 4), Plaintiff's description of his duties seems more akin to medication administration than management. However, it is unclear from the record exactly what the skill entails, whether Plaintiff actually acquired the skill, and how it would transfer from nursing aide to companion.

[80] SSR 82-41(d), *available at* 1982 WL 31389.

[81] A.R. 62.

Case No. 3:21-cv-00203-TMB
Decision and Order
Page 17 of 27

testimony regarding Plaintiff's advanced age[82] or how long it had been since he worked as a nurse aide.[83]   Further, while the VE agreed his testimony was consistent with the DOR, companion publications, and professional experience, he did not provide any explanation for how Plaintiff's limitation to only occasional overhead reaching was consistent with the frequent reaching requirement of the companion position.[84]   Nonetheless, the ALJ based her denial on the VE's testimony in finding Plaintiff could adjust to work as a companion.[85]

While VE testimony is inherently reliable, it is not incontestable.[86]   Plaintiff challenged the VE's testimony by subsequently submitting evidence from another VE ("VE-2").[87]   However, the opinion is internally inconsistent.  VE-2 initially opined

---

[82] "Advanced age" means an individual who is 55 or older. 20 C.F.R. §§ 404.1563(e), 416.963(e).

[83] SSA only considers applicants work for the last 15-years because "[a] gradual change occurs in most jobs so that after 15 years it is no longer realistic to expect that skills and abilities acquired in a job done then continue to apply." 20 C.F.R. § 404.1565(a); *See also* SSR 82-41 (advancing age decreases the possibility of making a successful vocational adjustment.).

[84] A.R. 64; *See also* SSR 00-4P, *available at* 2000 WL 1898704, at *2 ("When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.  At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.").

[85] A.R. 28.

[86] 20 C.F.R. §§ 416.960(b)(2), 416.966(e).

[87] Docket 12-1.

Case No. 3:21-cv-00203-TMB
Decision and Order
Page 18 of 27

the nurse aide position "would not provide any transferable skills,"[88] then later said "the individual would have transferable skills acquired from his or her work as a nurse aide for work as a companion,"[89] but went on to explain that the companion position no longer exists in measurable numbers as a full-time position, having been consumed by the nurse aide position.[90] The ALJ did not discuss this evidence in her opinion.

As indicated above, the parties agree the ALJ's step five finding was in error and not supported by substantial evidence. The Court agrees a remand for further proceedings is necessary because there is conflicting evidence and unresolved essential factual issues.

### C. The ALJ Erred in Determining Plaintiff Could Perform Other Work

In addition to the ALJ's finding that Plaintiff was capable of performing the job of companion, the ALJ also determined that Plaintiff could still perform jobs that exist in significant numbers in the national economy.[91] Relying on the testimony of the VE, the ALJ concluded that Plaintiff could perform work as a parking lot

---

[88] Docket 12-1 at 4.

[89] Docket 12-1 at 6.

[90] Docket 12-1 at 5-6. Whereas the testifying VE opined there were 71,000 companion positions nationally. A.R. 61. Because the Court is remanding for further proceedings, the Court refrains from commenting on Plaintiff's additional arguments regarding the evidence submitted after the hearing.

[91] A.R. 27-28.

Case No. 3:21-cv-00203-TMB
Decision and Order
Page 19 of 27

attendant (DOT #915.473-010), router (DOT #222.587-038), and housekeeping cleaner (DOT #323.687-014).[92] Thus, the ALJ determined that Plaintiff was capable of performing a modified range of light work and thus found him not disabled.[93]

However, individuals who are of advanced age and limited to light work will generally be considered disabled when they cannot return to their past relevant work unless they have transferable skills or some education which provides for direct entry into skilled work.[94] There is no discussion, much less substantial evidence, to support a determination that Plaintiff has education or experience that would allow him direct entry into skilled work.[95] Plaintiff has no "skilled" past-work – only "semi-skilled" experience,[96] and the VE testified that Plaintiff's "skills" would transfer to "just this one job" as a companion, which is "semi-skilled."[97] Additionally,

---

[92] A.R. 29.

[93] A.R. 27-28.

[94] 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 202.01-202.08.

[95] "The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 C.F.R. 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1230 (9th Cir. 2009) (citing *Dictionary of Occupational Titles*, Appendix C, page 1009 (4th ed.1991)).

[96] Nurse aide (DOT #355.674-014; SVP-4); truck driver (DOT #906.683-022; SVP-3).

[97] A.R. 61. The Companion position has an SVP-3, which is considered semi-skilled work.

the positions the VE identified as other work Plaintiff could perform are all unskilled.[98]

Therefore, the issue of transferrable skills is dispositive. Grid rule 202.06 states that a person of "advanced age" who has a high school education and semi-skilled work experience, but no transferable skills is disabled.[99] Therefore, if the ALJ had found no transferable skills, rule 202.06 would have directed a finding of disability. The ALJ erred in finding additional work Plaintiff could perform considering his age, education, work history, and RFC.

D. The ALJ Failed to Provide Legally Sufficient Reasons for Rejecting Plaintiff's Subjective Complaints

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."[100]

---

[98] All three positions are SVP-2, which is considered unskilled work. Plaintiff "does not gain work skills by doing unskilled jobs." 20 C.F.R. § 404.1568(a); *see also* SSR 82–41, at *2 (Plaintiff "has no special advantage if he or she is skilled or semiskilled but can qualify only for an unskilled job because his or her skills cannot be used to any significant degree in other jobs.").

[99] *Compare* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.06 *with* § 202.07 (a person of the same age, education, and work experience who *has* transferable skills is not disabled.).

[100] A.R. 25.

Case No. 3:21-cv-00203-TMB
Decision and Order
Page 21 of 27

However, the ALJ did not specifically identify which of Plaintiff's claims were inconsistent with the medical evidence.[101] "To ensure that [a court's] review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily," an ALJ must "specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination."[102] General findings, such as an ALJ's summary of the medical evidence, do not satisfy this requirement.[103]

In her decision, the ALJ provides a summary of the medical record and lists Plaintiff's activities, such as making frozen dinners, watching television gardening, fishing, and watching his grandchildren.[104] The ALJ also noted he drove every day and had returned to work.[105] While activities of daily living and returning to work may provide a basis for discounting a Plaintiff's subjective statements, the ALJ's

---

[101] *Lambert v. Saul,* 980 F.3d 1266, 1277-1278 (9th Cir. 2020) ("Our precedents plainly required the ALJ to do more than was done here, which consisted of offering non-specific conclusions that Lambert's testimony was inconsistent with her medical treatment").

[102] *Smith v. Kijakazi*, 14 F.4th 1108, 1112 (9th Cir. 2021) (quoting *Brown-Hunter,* 806 F.3d at 489).

[103] *Wade v. Saul*, 850 F. App'x 568, 569 (9th Cir. 2021) (citing *Lambert*, 980 F.3d at 1277-78) ("ALJ's detailed overview of [a claimant's] medical history—coupled with a nonspecific boilerplate conclusion that [his] testimony [i]s 'not entirely consistent' with [his] medical treatment—is not enough to satisfy the minimal requirements for assessing credibility.").

[104] A.R. 25-27.

[105] A.R. 27. At the hearing, Plaintiff's representative argued the work was not SGA since his employer provided accommodations and flexible hours. A.R. 39. The ALJ determined there was not sufficient evidence to support the alleged accommodations; and therefore, based on his earnings, Plaintiff is presumed to have engaged in SGA. A.R. 22.

analysis needs more than the conclusory statements offered here. Thus, the ALJ must reassess Plaintiff's RFC because she "must take 'the claimant's subjective experiences of pain' into account when determining the RFC."[106]

E. The ALJ Erred in Rejecting the Opinion of the Testifying Medical Expert[107]

During the hearing, medical expert ("ME"), Wayne R. Kidder, M.D., provided limitations he believed were appropriate for Plaintiff's RFC based on his review of the records.[108] The ALJ included all but one of his proposed limitations in the RFC.[109] Specifically, Dr. Kidder opined Plaintiff should be limited to only occasionally pushing due to problems with his grip, but this limitation was not included in the RFC.[110]

Although the ALJ found Dr. Kidder's opinion "very persuasive" and "consistent with the overall record," she did not include the occasional pushing limitation in Plaintiff's RFC because she determined that specific limitation was not

---

[106] *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (quoting *Garrison,* 759 F.3d at 1011).

[107] Plaintiff did not raise this issue in his opening brief. Docket 12. While issues not raised are generally forfeited, this Court has the power to *sua sponte* review issues not raised by the parties in a social security case. *See Farley v. Colvin*, 231 F. Supp. 3d 335, 339 (N.D. Cal. 2017) (collecting cases).

[108] A.R. 46.

[109] A.R. 24.

[110] A.R. 24, 46.

consistent with the medical record.[111]  The ALJ rationalized the omission by citing to one medical appointment on June 11, 2014, where Plaintiff had "grade 5 strength in his upper extremities and his sensation to fine touch and vibration were normal."[112]  Reliance on this one "normal" examination at one appointment in 2014 is a mischaracterization of this particular record.  Further, the record as a whole is not inconsistent with the manipulative limitation provided by Dr. Kidder.

Notably, at the same appointment the ALJ relied on to discount the ME's testimony, Plaintiff was given wrist splints and referred to a hand surgeon for a surgical consult due the "severe compressive neuropathy" in his wrists.[113]  Plaintiff subsequently had surgery for trigger finger in his left wrist and carpal tunnel in both wrists; and he continued to report ongoing pain, stiffness, and difficulty with activities such as opening jars, opening doors, brushing his hair, tying his shoes, and other fine motor movements using his upper extremities.[114]  His physical therapist noted ongoing limitations in grip strength and range of motion in his hand and wrists.[115]  At the hearing, Dr. Kidder acknowledged Plaintiff's improvement.

---

[111] A.R. 24, 27.

[112] A.R. 27, 534.

[113] A.R. 531, 535.

[114] *See, e.g.,* A.R. 351, 537, 538, 1319.

[115] A.R. 353.

Case No. 3:21-cv-00203-TMB
Decision and Order
Page 24 of 27

Yet based on his review of the record, Dr. Kidder still opined Plaintiff should be limited to only occasional pushing.[116]

Nonetheless, the ALJ selectively referenced one treatment note to support the denial of benefits while ignoring the abnormal findings.[117] Her decision to discount the opinion of Dr. Kidder and omit the limitation from the RFC is not supported by substantial evidence. The inclusion of the limitation in the RFC may have elicited different testimony from the VE, which in turn, could have changed the outcome of this case.

## F. Scope of Remand

As explained above, the ALJ's decision contains multiple legal errors and is not supported by substantial evidence. Therefore, it must be reversed. "Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.' "[118] Because there is conflicting evidence, and not all essential factual issues have been resolved, further administrative proceedings

---

[116] A.R. 44, 46.

[117] *Diedrich v. Berryhill*, 874 F.3d 634 (9th Cir. 2017) (an ALJ may not rely on "cherry pick[ed]" evidence to support a denial of benefits); *Garrison,* 759 F.3d at 1017 ("it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").

[118] *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (internal citation omitted).

Case No. 3:21-cv-00203-TMB
Decision and Order
Page 25 of 27

are necessary.[119]   The Court therefore reverses and remands this case to the Commissioner for further proceedings.

Upon remand, the ALJ will:

(1)   provide Plaintiff with an opportunity for a new hearing;

(2)   allow Plaintiff to submit new evidence;

(3)   reevaluate the medical opinion evidence from Dr. Kidder;

(4)   properly evaluate Plaintiff's subjective complaints;

(5)   reassess Plaintiff's RFC taking Plaintiff's subjective experiences of pain into account;

(6)   further develop the record regarding Plaintiff's past work;

(7)   evaluate Plaintiff's transferrable skills in accordance with SSR 82-41; and

(8)   consider the grid rules in evaluating whether Plaintiff can perform work that exists in the national economy in significant numbers.

## V.   ORDER

The Court, having carefully reviewed the administrative record, finds that the ALJ's determinations are not free from legal error and are not supported by substantial evidence in the record.  Accordingly, IT IS ORDERED that Plaintiff's request for relief at Docket 12 is GRANTED IN PART, the Commissioner's decision is VACATED; and this matter is REVERSED and REMANDED for further

---

[119] *Treichler*, 775 F.3d at 1101.

proceedings consistent with this decision. The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 15th day of July, 2022 at Anchorage, Alaska.

*/s/ Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE